**Slip Op. 12-11**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ETHAN ALLEN GLOBAL, INC. and ETHAN ALLEN OPERATIONS, INC.,** | |
| Plaintiffs, | |
| v. | |
| **UNITED STATES**, | **Before:  Gregory W. Carman, Judge** |
| Defendants, | **Timothy C. Stanceu, Judge** |
| and | **Leo M. Gordon, Judge** |
| **KINCAID FURNITURE CO., INC., L & J.G. STICKLEY, INC., SANDBERG FURNITURE MANUFACTURING COMPANY, INC., STANLEY FURNITURE CO., INC., T. COPELAND AND SONS, INC., and VAUGHAN-BASSETT FURNITURE COMPANY, INC.,** | **Court No. 08-00302** |
| Defendant-Intervenors. | |

### <u>OPINION</u>

[Dismissing the action for failure to state a claim upon which relief can be granted]

Dated: January 20, 2012

*Craig A. Lewis* and *Jonathan T. Stoel*, Hogan Lovells US LLP, of Washington, DC, for plaintiffs.

*Jessica R. Toplin*, *David S. Silverbrand*, and *Courtney S. McNamara*, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant United States.  With them on the briefs were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.*, Assistant Director.  Of counsel on the briefs were *Andrew G. Jones* and *Joseph Barbato*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, NY.

*Patrick V. Gallagher, Jr.*, Attorney Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for defendant U.S. International Trade Commission.  With him on the briefs were *James M. Lyons*, General Counsel, and *Neal J. Reynolds*, Assistant General Counsel.

*Joseph W. Dorn*, *Jeffrey M. Telep*, and *Steven R. Keener*, King & Spalding LLP, of Washington, DC, for defendant-intervenors.  With them on the briefs was *Taryn K. Williams*.  Of counsel on the briefs was *Richard H. Fallon*, of Cambridge, MA.

Stanceu, Judge: This case arose from the actions of two agencies, the U.S. International

Trade Commission (the "ITC" or the "Commission") and U.S. Customs and Border Protection

("Customs"), that denied plaintiffs Ethan Allen Global, Inc. and Ethan Allen Operations, Inc.

(collectively, "Ethan Allen") certain monetary benefits under the Continued Dumping and

Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"), Pub. L. No. 106-387,

§§ 1001-03, 114 Stat. 1549, 1549A-72-75 (codified at 19 U.S.C. § 1675c (2000)),[1] *repealed by*

Deficit Reduction Act of 2005, Pub. L. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006;

effective Oct. 1, 2007).  ITC denied Ethan Allen the status of an "affected domestic producer"

("ADP"), which potentially would have qualified Ethan Allen for distributions of antidumping

duties collected under an antidumping duty order on imports of wooden bedroom furniture from

the People's Republic of China ("China" or the "PRC").  *Notice of Amended Final*

*Determination of Sales at Less Than Fair Value & Antidumping Duty Order: Wooden Bedroom*

*Furniture From the People's Republic of China*, 70 Fed. Reg. 329 (Jan. 4, 2005) ("*Antidumping*

*Duty Order*").  In the absence of an ITC designation of ADP status, Customs made no CDSOA

distributions to Ethan Allen.  Plaintiffs bring facial and as-applied constitutional challenges to

---

[1] Citations are to the codified version of the Continued Dumping and Subsidy Offset Act ("CDSOA"), 19 U.S.C. § 1675c (2000).  All other citations to the United States Code are to the 2006 edition.

the CDSOA and claim, further, that the various actions by the two agencies violated the

Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA").  First Amended Compl. ¶¶ 33-62

(Feb. 1, 2011), ECF No. 20.

Before the court are three motions brought under USCIT Rule 12(b)(5) to dismiss for

failure to state a claim upon which relief can be granted.  Defendant-intervenors Kincaid

Furniture Co., Inc., L & J.G. Stickley, Inc., Sandberg Furniture Manufacturing Company, Inc.,

Stanley Furniture Co., Inc., T. Copeland and Sons, Inc., and Vaughan-Bassett Furniture

Company, Inc. moved under Rule 12(b)(5) on February 23, 2011.  Def.-intervenors' Mot. to

Dismiss (Feb. 23, 2011), ECF No. 34 ("Def.-intervenors' Mot.").  Defendant ITC so moved on

May 2, 2011, and Customs followed with its motion on May 4, 2011.  Def. U.S. Int'l Trade

Comm'n's Mot. to Dismiss for Failure to State a Claim (May 2, 2011), ECF No. 60 ("ITC's

Mot."); Def. U.S. Customs & Border Protection's Mot. for J. on the Pleadings (May 4, 2011),

ECF No. 61 ("Customs' Mot.").[2]  The court determines that relief is not available on any of

plaintiffs' claims and will enter judgment dismissing this action.

## I.  BACKGROUND

During a 2003 ITC investigation to determine whether imports of wooden bedroom

furniture from China were causing or threatening to cause material injury to the domestic

industry, Ethan Allen responded to a "U.S. producers' questionnaire" from the ITC, indicating

thereon that it "took no position on the petition."  First Amended Compl. ¶ 23; *Initiation of*

---

[2] U.S. Customs & Border Protection ("CBP" or "Customs") labels its motion as one for judgment on the pleadings (ostensibly under USCIT Rule 12(c)) but subsequently refers to it as a motion to dismiss under USCIT Rule 12(b)(5).  Def. U.S. Customs & Border Protection's Mot. for J. on the Pleadings (May 4, 2011), ECF No. 61.  The court hereinafter refers to this motion as a motion to dismiss for failure to state a claim upon which relief can be granted.

*Antidumping Duty Investigation: Wooden Bedroom Furniture from the People's Republic of China*, 68 Fed. Reg. 70,228, 70,231 (Dec. 17, 2003).  Based on an affirmative ITC injury determination, the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") in early 2005 issued the antidumping duty order on imports of wooden bedroom furniture from China.  *Antidumping Duty Order*, 70 Fed. Reg. at 329; First Amended Compl. ¶ 26.  Determining that Ethan Allen had not supported the petition, the ITC declined to designate Ethan Allen an ADP for Fiscal Years 2006 through 2010, both in its lists of ADPs and, subsequently, in response to Ethan Allen's written requests.  First Amended Compl. ¶¶ 27-32;  *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 71 Fed. Reg. 31,336, 31,375-76 (June 1, 2006); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 72 Fed. Reg. 29,582, 29,622-23 (May 29, 2007); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 73 Fed. Reg. 31,196, 31,236-37 (May 30, 2008); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 74 Fed. Reg. 25,814, 25,855-56 (May 29, 2009);  *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 75 Fed. Reg. 30,530, 30,571-72 (June 1, 2010).  Despite Ethan Allen's filing CDSOA certifications with Customs for the various fiscal years to request CDSOA disbursements, Customs has made no distributions to Ethan Allen.  First Amended Compl. ¶¶ 30-32.

On September 12, 2008, Ethan Allen commenced this action to challenge ITC's refusal to designate Ethan Allen as an ADP and the refusal of Customs to include Ethan Allen in the CDSOA distributions for Fiscal Years 2006 through 2008 as well as future distributions.  Compl. ¶ 1 (Sept. 12, 2008), ECF No. 4.  The court then issued a stay of this action pending final

resolution of other litigation raising the same or similar issues.  Order (Oct. 7, 2008), ECF No. 10

(staying action "until final resolution of *Pat Huval Restaurant & Oyster Bar, Inc. v. United States*

*International Trade Commission*, Consol. Court No. 06-00290, that is, when all appeals have

been exhausted.").

Following the decision of the U.S. Court of Appeals for the Federal Circuit ("Court of

Appeals") in *SKF USA Inc. v. United States*, 556 F.3d 1337 (2009) ("*SKF*"), *cert. denied*, 130 S.

Ct. 3273 (2010), which addressed questions also present in this case, the court issued an order

directing plaintiffs to show cause why this case should not be dismissed and lifted the stay for the

purposes of allowing any brief, response, or reply described in that order.  Order (Jan. 3, 2011),

ECF No. 17.  On February 1, 2011, plaintiffs responded to the court's order and moved for a

partial lifting of the stay to allow amendment of the complaint to add factual allegations

pertaining to two additional fiscal years, 2009 and 2010.  Resp. to Order to Show Cause

(Feb. 1, 2011), ECF No. 18 ("Pls.' Resp. to Order"); Pls.' Mot. for Partial Lifting of Stay

(Feb. 1, 2011), ECF No. 19 ("Pls.' Mot.").

The court lifted the stay for all purposes on February 9, 2011.  Order (Feb. 9, 2011), ECF

No. 28.  A motion under USCIT Rule 12(b)(5) for failure to state a claim upon which relief can

be granted was filed by defendant-intervenors on February 23, 2011, by ITC on May 2, 2011, and

by Customs on May 4, 2011.  Def.-Intervenors' Mot; ITC's Mot.; Customs' Mot.  Briefing on

these motions is now complete.[3]

---

[3] CBP has not made any distributions affecting this case and indicates that it will refrain
from doing so until January 31, 2012 at the earliest.  Def. U.S. Customs & Border Protection's
Resp. to the Ct.'s Feb. 14, 2011 Request (Feb. 28, 2011), ECF No. 37.

## II.  Discussion

The court exercises jurisdiction over this action according to section 201 of the Customs

Courts Act, 28 U.S.C. § 1581(i)(4), which grants jurisdiction over civil actions arising from laws

of the United States, such as the CDSOA, providing for administration with respect to duties,

such as antidumping duties, on the importation of merchandise for reasons other than the raising

of revenue.  *See Furniture Brands Int'l v. United States*, 35 CIT __, __, Slip Op. 11-132, at 9-15

(Oct. 20, 2011); *New Hampshire Ball Bearing, Inc. v. United States*, 36 CIT __, __, Slip Op.

12-02, at 4 (Jan. 3, 2012); *Schaeffler Group USA, Inc. v. United States*, 36 CIT __, __, Slip Op.

12-08, at 5 (Jan. 17, 2012).

We address below the claims stated in Ethan Allen's First Amended Complaint.[4]  In

ruling on motions to dismiss made under USCIT Rule 12(b)(5), we dismiss a complaint that does

not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  For the reasons set forth below, we conclude that each of

---

[4] In their motion for a partial lifting of the stay on February 1, 2011, plaintiffs asserted a right to amend their complaint as a matter of course because "[d]efendant has not yet filed its answer nor has it filed a motion to dismiss under Rule 12(b), (e), or (f)."  Mot. For Partial Lifting of Stay 3-4 (Feb.1, 2011), ECF No. 19.  Under USCIT Rule 15(a) as amended effective January 1, 2012, "a party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  USCIT R. 15(a). Prior to this amendment, a party could amend its pleading once as a matter of course before being served with a responsive pleading.  Because plaintiffs filed their notice of an amended complaint only one month after the effective date of the rule change, and because the other parties to this case have addressed in their Rule 12(b)(5) motions the complaint in amended form, the court exercises its discretion under USCIT Rule 89 to accept plaintiffs' First Amended Complaint. USCIT R. 89 ("These rules and any amendments take effect at the time specified by the court. They govern . . .  proceedings after that date in a case then pending unless: (A) the court specifies otherwise . . . ").

the claims in Plaintiffs' First Amended Complaint must be dismissed for failure to state a claim

upon which relief can be granted.

The CDSOA amended the Tariff Act of 1930 ("Tariff Act") to provide for the distribution

of funds from assessed antidumping and countervailing duties to persons with ADP status, which

is limited to petitioners, and interested parties in support of petitions, with respect to which

antidumping duty and countervailing duty orders are entered.[5]  19 U.S.C. § 1675c(a)-(d).[6]  The

statute directed the ITC to forward to Customs, within sixty days after an antidumping or

countervailing duty order is issued, lists of "petitioners and persons with respect to each order

and finding and a list of persons that indicate support of the petition by letter or through

questionnaire response."[7]  *Id.* § 1675c(d)(1).  The CDSOA directed Customs to publish in the

---

[5] The CDSOA provided that:
The term "affected domestic producer" means any manufacturer, producer, farmer, rancher or worker representative (including associations of such persons) that
(A) was a petitioner *or interested party in support of the petition* with respect to which an antidumping duty order, a finding under the Antidumping Act of 1921, or a countervailing duty order has been entered, and
(B) remains in operation.
19 U.S.C. § 1675c(b)(1) (emphasis added).

[6] Congress repealed the CDSOA in 2006, but the repealing legislation provided that "[a]ll duties on entries of goods made and filed before October 1, 2007, that would [but for the legislation repealing the CDSOA], be distributed under [the CDSOA] . . . shall be distributed as if [the CDSOA] . . . had not been repealed . . . ."  Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154 (2006).  In 2010, Congress further limited CDSOA distributions by prohibiting payments with respect to entries of goods that as of December 8, 2010 were "(1) unliquidated; and (2)(A) not in litigation; or (B) not under an order of liquidation from the Department of Commerce."  Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3064, 3163 (2010).

[7] Additionally, the CDSOA directed the ITC to forward to Customs a list identifying affected domestic producers "within 60 days after the effective date of this section in the case of orders or findings in effect on January 1, 1999 . . . ."  19 U.S.C. § 1675c(d)(1).  The antidumping
(continued...)

Federal Register lists of ADPs potentially eligible for distributions of a "continuing dumping and

subsidy offset" that are based on the lists obtained from the Commission.  *Id.* § 1675c(d)(2).  The

CDSOA also directed Customs to segregate antidumping and countervailing duties according to

the relevant antidumping or countervailing duty order, to maintain these duties in special

accounts, and to distribute to an ADP annually, as reimbursement for incurred qualifying

expenditures, a ratable share of the funds (including all interest earned) from duties assessed on a

specific unfairly traded product that were received in the preceding fiscal year.  *Id.*

§ 1675c(d)(3), (e).

In February 2009, approximately five months after plaintiffs filed suit on their original

complaint, the Court of Appeals decided *SKF*, upholding the CDSOA against constitutional

challenges brought on First Amendment and Fifth Amendment equal protection grounds.

556 F.3d at 1360.  *SKF* reversed the decision of the Court of International Trade in *SKF USA Inc.*

*v. United States*, 30 CIT 1433, 451 F. Supp. 2d 1355 (2006), which held the petition support

requirement of the CDSOA unconstitutional on Fifth Amendment equal protection grounds.

In Counts I and II of the amended complaint, plaintiffs challenge the "in support of the

petition" requirement of the CDSOA ("petition support requirement"), both facially and as

applied to Ethan Allen, on First Amendment grounds.  First Amended Compl.  ¶¶ 33-46.  In

Counts III and IV, plaintiffs challenge the petition support requirement, both facially and as

applied to Ethan Allen, on Fifth Amendment equal protection grounds.  *Id.* ¶¶ 47-58.  Finally, in

Count V, plaintiffs claim that defendants' actions violate the APA.  *Id.* ¶¶ 59-62.

_____

[7](...continued)
duty order at issue in this case was not in effect on that date.

A.  Plaintiffs' Facial Constitutional Challenges Are Foreclosed by Court of Appeals Precedent

In Count II of the First Amended Complaint, plaintiffs bring various facial challenges to the CDSOA under the First Amendment.  *Id*. ¶¶ 40-46.  They ground these facial challenges in the First Amendment guarantees of freedom of speech and the ability to petition for redress of grievances, *id.* ¶ 41, and claim specifically that the CDSOA engages in impermissible viewpoint discrimination, conditioning a government benefit on the content of political speech, *i.e.*, expression of support for an antidumping petition, *id.* ¶ 42.  They claim, further, that the CDSOA is overbroad and not narrowly tailored to achieve a compelling government objective, *id.* ¶ 43, imposes a content-based restriction, and creates a designated public forum for political speech, then imposing its content-based restriction on that speech, all in violation of the First Amendment, *id.* ¶¶ 44-45.

Count IV of the First Amended Complaint bases a facial challenge to the CDSOA on the equal protection guarantee of the Fifth Amendment.  *Id*. ¶¶ 53-58.  In brief summary, plaintiffs claim that the CDSOA creates a classification infringing on Ethan Allen's free speech rights that is not narrowly tailored to a compelling government objective, *id.* ¶ 54, and creates an arbitrary and restrictive classification consisting of domestic producers that supported a petition, thereby discriminating between similarly-situated domestic producers without a rational basis and without serving a legitimate government purpose, *id.* ¶¶ 55-56.

*SKF* held broadly that the CDSOA is not unconstitutional under the First Amendment and does not abridge the Fifth Amendment's equal protection guarantee.  556 F.3d at 1360 ("[T]he Byrd Amendment is within the constitutional power of Congress to enact, furthers the government's substantial interest in enforcing the trade laws, and is not overly broad."); *id.* at

1360 n.38 ("For the same reason, the Byrd Amendment does not fail the equal protection review

applicable to statutes that disadvantage protected speech."); *id.* at 1360 ("Because it serves a

substantial government interest, the Byrd Amendment is also clearly not violative of equal

protection under the rational basis standard.").  Relief on plaintiffs' claims that the petition

support requirement is facially invalid under the First Amendment and under the Fifth

Amendment equal protection guarantee is foreclosed by this precedent.

        B.  Plaintiffs' As-Applied Constitutional Challenges Also Must Be Dismissed

        In Count I of the First Amended Complaint, plaintiffs bring various as-applied challenges

to the CDSOA under the First Amendment.  First Amended Compl. ¶¶ 33-39.  They ground their

as-applied challenges in the First Amendment guarantees of freedom of speech and the ability to

petition for redress of grievances, *id.* ¶ 34, and claim specifically that the CDSOA discriminates

against those, such as Ethan Allen, who did not express support for the antidumping petition, *id.*

¶ 35.  They claim, further, that such an application of the CDSOA is overbroad and not narrowly

tailored to achieve a compelling government objective, *id.* ¶ 36.  Plaintiffs claim, further, that the

CDSOA as applied to Ethan Allen impermissibly compels speech by requiring manufacturers

such as plaintiffs to articulate support for a specific policy, *id.* ¶ 37, a content-based restriction,

and creates a designated public form for political speech, which is subject to a content-based

restriction, *id.* ¶ 38.

        Count III of the First Amended Complaint brings an as-applied challenge to the CDSOA

that plaintiffs base on the equal protection guarantee of the Fifth Amendment.  *Id.* ¶¶ 47-52.

Specifically, plaintiffs claim that the application of the CDSOA to Ethan Allen and others who

did not support a petition creates a classification infringing on Ethan Allen's free speech rights

that is not narrowly tailored to a compelling government objective.  *Id.* ¶ 48.  They claim that the

CDSOA creates an arbitrary and restrictive classification consisting of those domestic producers

that supported a petition, thereby discriminating between similarly-situated domestic producers

without a rational basis and without serving a legitimate government purpose.  *Id.* ¶¶ 49-50.

      In opposing dismissal, plaintiffs attempt to distinguish their case from *SKF* by arguing

that "SKF actively opposed the proceeding in its case; Ethan Allen did not."  Resp. in Opp'n to

Defs.' Mot. to Dismiss 12, 15 (Jun. 6, 2011), ECF No. 65 ("Pls.' June Opp'n").  Plaintiffs,

however, fail to plead facts that would bring their as-applied claims outside of the holding in

*SKF*, in which the Court of Appeals held that the CDSOA did not violate constitutional First

Amendment or equal protection principles when applied to plaintiff SKF USA, Inc. ("SKF"),

which, in its questionnaire response to the ITC, indicated opposition to the petition at issue in

that case.  In imposing the petition support requirement as a condition for the receipt of CDSOA

distributions, the CDSOA did not distinguish between a party who opposed an antidumping or

countervailing duty petition and a party who simply declined to take a position in support of such

a petition.  *See* 19 U.S.C. § 1675c(b)(1)(A), (d)(1).  The Court of Appeals, rejecting SKF's First

Amendment and equal protection challenges to the CDSOA, reached a broad holding in *SKF* that

did not turn on any such distinction.  *SKF*, 556 F.3d at 1360.  The reasoning supporting that

holding is equally broad.  The Court of Appeals analogized that "[a]t best, the role of parties

opposing (or not supporting) the petition in responding to questionnaires is similar to the role of

opposing or neutral parties in litigation who must reluctantly respond to interrogatories or other

discovery," and that it was "rational for Congress to conclude that those who did not support the

petition should not be rewarded."  *Id.* at 1359.  It is, therefore, unavailing for plaintiffs to claim

that they are differently situated than SKF because they "[Took] No Position" rather than

"[O]pposed" the petition, as SKF did.  Resp. in Opp'n to Def.-intervenors' Mot. to Dismiss

10-11, 15-16 (April 22, 2011), ECF No. 58 ("Pls.' April Opp'n"); Pls.' June Opp'n 9, 12, 15.

   In support of their as-applied First Amendment challenge to the CDSOA, plaintiffs cite

three recent U.S. Supreme Court decisions, *Snyder v. Phelps*, 131 S. Ct. 1207 (2011), *Citizens

United v. Federal Election Comm'n*, 130 S. Ct. 876 (2010), and *United States v. Stevens*, 130 S.

Ct. 1577 (2010).  They consider these cases to "cast significant doubt on whether the approach

adopted by the Federal Circuit in deciding the First Amendment issues presented in *SKF* can be

applied to the Ethan-Allen specific facts at issue in this litigation," arguing that "the specific,

different facts alleged by Ethan Allen mandate a reconsideration of the *SKF* court's analysis and

a stricter level of scrutiny than was applied in that case."  Pls.' June Opp'n 18-25; Pls.' April

Opp'n 13-14.  Ethan Allen views these three cases as undermining "the Federal Circuit's analysis

under the *Central Hudson* test," which applied "an intermediate level of scrutiny" that plaintiffs

view to be no longer appropriate for the CDSOA as applied to Ethan Allen.  Pls.' June Opp'n 19

(citing *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)).

We reject this argument, concluding that each of the three Supreme Court decisions upon which

plaintiffs rely neither invalidates the holding of *SKF* nor otherwise requires us to apply a strict

scrutiny analysis in the case before us.

   In *Snyder v. Phelps*, the Supreme Court ruled that members of the Westboro Baptist

Church who picketed at public sites near the funeral of a member of the U.S. Marine Corps killed

in the line of duty in Iraq could not be held liable, in the particular circumstances of that case, on

state-law tort claims alleging intentional infliction of emotional distress, intrusion upon

seclusion, and civil conspiracy.  131 S.Ct. at 1213-14, 1220.  Concluding that the speech in

question, signs displaying various controversial messages condemning the United States and its

military, was entitled to "'special protection' under the First Amendment," *id*. at 1219, the

Supreme Court held that the jury verdict holding the Westboro picketers liable on the tort claims

must be set aside.  The Court emphasized as essential to its holding that the Westboro picketers

carried signs displaying messages that, for the most part, constituted speech addressing matters of

public concern, *id.* at 1216-17, and conducted their picketing peacefully, and without interfering

with the funeral, at each of three locations the Supreme Court considered to be a public forum,

*id.* at 1218-19.

Citing *Snyder v. Phelps*, plaintiffs argue that "[c]onsistent with the Supreme Court's

recent clear directive, voicing a position on a government antidumping investigation (or, in Ethan

Allen's case, deciding not to take a position) constitutes speech on a 'matter of public concern,'

subject to heightened First Amendment protection."  Pls.'s June Opp'n 20.  *Snyder* did not

address the question of whether the type of speech involved in this case constituted speech on a

matter of public concern.  But even were we to accept plaintiffs' premise that the speech

involved here was on a matter of public concern, we still would conclude that *Snyder v. Phelps*

resolved a fundamentally different First Amendment question than those presented by this case

and by *SKF*.  Here, plaintiffs are not asserting First Amendment rights as a defense against civil

liability for an award of monetary damages.  The "burden" the CDSOA placed on Ethan Allen's

speech   the ineligibility to receive potential CDSOA distributions   does not rise to a level

commensurate with the burden the Supreme Court precluded by setting aside the jury verdict

imposing tort liability on the Westboro picketers.  In speaking to a First Amendment issue far

afield of those presented here, *Snyder v. Phelps* does not establish a principle of First

Amendment law requiring us to invalidate the CDSOA petition support requirement as applied to

Ethan Allen.

      *Citizens United v. Federal Election Comm'n* struck down on First Amendment grounds a

federal election law imposing an "outright ban, backed by criminal sanctions" on independent

expenditures by a "corporation," including "nonprofit advocacy corporations" or "unions,"

during the 30-day period preceding a primary election or the 60-day period preceding a general

election, for an "electioneering communication" or for advocacy of the election or defeat of a

candidate.  130 S. Ct. at 886-87, 897.  Stating that "political speech must prevail against laws

that would suppress it, whether by design or inadvertence," the Supreme Court concluded that

"[l]aws that burden political speech are 'subject to strict scrutiny,' which requires the

Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored

to achieve that interest.'" *Id.* at 898 (citing *Federal Election Comm'n v. Wisconsin Right to Life,*

*Inc.*, 551 U.S. 449, 464 (2007)).  Plaintiffs argue that "the ITC's conditioning of a 'reward' (i.e.,

CDSOA distributions) on a particular expression of an opinion effectively suppresses a category

of speech entitled to heightened protection under *Snyder* and *Citizens United*."  Pls.' June Opp'n

21.  "This is because non-political corporate speech is entitled to strict scrutiny when the speech

is not merely related to a commercial transaction but is an independent assertion of a particular

viewpoint on a matter of public importance."  *Id.* at 21-22.  According to plaintiffs, "Defendants'

actions suppressed Ethan Allen's corporate right to express itself on matters concerning public

affairs and its right to petition the government."  *Id.*

The Supreme Court's admonishments in *Citizens United* that "political speech must prevail against laws that would suppress it, whether by design or inadvertence" and that "[l]aws that burden political speech are 'subject to strict scrutiny,'" 130 S. Ct. at 898, should not be applied indiscriminately to any statute raising First Amendment concerns, and we decline to do so here. The statute struck down in *Citizens United* banned political speech and subjected that speech to criminal sanction, and the Court's decision to apply strict scrutiny can only be viewed properly in that context. The Court of Appeals recognized in *SKF* that the CDSOA "does not prohibit particular speech," that "statutes prohibiting or penalizing speech are rarely sustained," and that "cases addressing the constitutionality of such statutes are of little assistance in determining the constitutionality of the far more limited provisions of the Byrd Amendment." 556 F.3d. at 1350. As the Court of Appeals reasoned, "[i]n considering limited provisions that do not ban speech entirely, the purpose of the statute is important." *Id.* The Court concluded that "[n]either the background of the statute, nor its articulated purpose, nor the sparse legislative history supports a conclusion that the purpose of the Byrd Amendment was to suppress expression." *Id.* at 1351. Accordingly, we reject plaintiffs' arguments to the effect that the holdings in *Snyder* and *Citizens United* implicitly invalidated the First Amendment analysis the Court of Appeals employed in *SKF.*

In *United States v. Stevens*, the Supreme Court struck down as "substantially overbroad, and therefore invalid under the First Amendment," a federal statute that criminalized the commercial creation, sale, or possession of depictions of "animal cruelty," which the statute defined as "conduct in which a living animal is intentionally maimed, mutilated, tortured, wounded, or killed, if such conduct is illegal under Federal law or the law of the State in which

the creation, sale, or possession takes place." 130 S. Ct. at 1582 n.1, 1592. The Court rejected

the government's argument that the statute, which contained an "exceptions clause" exempting

depictions with "serious religious, political, scientific, educational, journalistic, historical, or

artistic value," *id.* at 1583, is "narrowly limited to specific types of 'extreme' material," *id.* at

1587. According to plaintiffs, *Stevens* "further supports Ethan Allen's position that the ITC's

application of the CDSOA to Ethan Allen's particular facts (i.e., a domestic producer that

submitted completed questionnaires to the ITC and checked the 'take no position' box) is

overbroad and thus unconstitutional." Pls.' June Opp'n 22. Plaintiffs submit that the petition

support requirement as interpreted by defendants "restricts Ethan Allen's right to freedom of

speech without furthering the government's interest" and "extends beyond the stated purpose of

excluding those who did not support the petition and discriminates against active supporters like

Ethan Allen who adopted a neutral *viewpoint* in its ITC questionnaires." *Id.* at 23.

       Unlike the statute invalidated by *Stevens*, the CDSOA does not criminalize or otherwise

prohibit a broad category of protected speech. The First Amendment analysis in *Stevens*,

therefore, is not applicable to the First Amendment issues raised by this case. The Court of

Appeals upheld the petition support requirement according to the test of *Central Hudson*,

447 U.S. at 566, under which regulation of commercial speech must directly advance a

substantial governmental interest and not be "more extensive than necessary" to serve that

interest. *SKF*, 556 F.3d at 1355. The Court of Appeals concluded that the CDSOA was not

overly broad when judged according to the "not more extensive than necessary" criterion. *Id.* at

1357-60. We conclude that nothing in the holding in *Stevens* invalidates the holding of *SKF*.

In summary, we consider *SKF* binding on us, and controlling in this case, notwithstanding the Supreme Court's holdings in *Snyder*, *Citizens United*, and *Stevens*.  For this reason and the other reasons discussed above, we conclude that plaintiffs' as-applied First Amendment and equal protection claims must be dismissed under USCIT Rule 12(b)(5).

### C.  No Relief Can Be Granted on Plaintiffs' APA Claim

Count V of the First Amended Complaint claims under the APA that defendants' actions were "unlawful, arbitrary, capricious, an abuse of agency discretion, not supported by substantial evidence, and contrary to Ethan Allen's constitutional right to due process."  First Amended Compl. ¶ 60.  Plaintiffs allege that defendants "have inappropriately treated similarly situated domestic producers differently, without any rational basis for doing so" and "have limited the definition of ADP to include only those domestic producers who supported the Petition by their conduct *and* expressed support for the petition, while excluding from this definition those domestic producer[s] who likewise supported the Petition by their conduct but did not express support for the petition."  *Id.* ¶ 61.  Relying on certain language in *SKF*, plaintiffs claim that defendants' interpretation of the ADP definition "conflicts with the purpose of the CDSOA, which is to reward domestic producers who support the Petition through their conduct."  *Id*.

Plaintiffs have based their APA claim on an impermissible construction of the CDSOA. The CDSOA limits ADP status to "a petitioner or interested party in support of the petition," 19 U.S.C. § 1675c(b)(1), and further provides, so that Customs may make distributions, that the ITC is to inform Customs of "persons that indicate support of the petition by letter or through questionnaire response," *id.* § 1675c(d)(1).  Plaintiffs do not allege that they indicated their support of the wooden bedroom furniture petition, either by letter or through questionnaire

response, and admit that, Ethan Allen, when asked by the ITC petition whether it supported that

petition, took no position.  First Amended Compl. ¶ 23 ("Although Ethan Allen is a domestic

producer of [wooden bedroom furniture], Ethan Allen took no position on the petition but

participated fully in the investigation process by returning the completed questionnaire and

making revisions thereto, as requested by the ITC.").  On the facts as pled in the complaint, we

conclude that the ITC did not act unlawfully in denying Ethan Allen status as an ADP.  Nor did

Customs unlawfully refuse to pay Ethan Allen CDSOA distributions.  Contrary to plaintiffs'

claim, defendants did not "inappropriately" treat "similarly situated domestic producers

differently, without any rational basis for doing so," *Id*. ¶ 61.  The CDSOA charged the ITC with

determining the identity of the parties who supported the petition based on the test set forth in

19 U.S.C. § 1675c(b)(1) and (d)(1).  With a "rational basis" grounded in the plain meaning of the

statute, ITC applied the statutory test in determining that Ethan Allen was not among the parties

who qualified as ADPs.  Defendants' determinations, therefore, comported with the APA.

Plaintiffs allege no facts supporting a conclusion that either agency failed to accord Ethan Allen

fundamental fairness in making those determinations, and plaintiffs' claim under the APA that

the agencies violated Ethan Allen's constitutional due process rights is, accordingly, meritless.

  In support of their APA claim, plaintiffs argue that "the Federal Circuit in *SKF*

enunciated a saving construction with respect to the CDSOA support provision under which

benefits are awarded for 'actions (litigation support),' not viewpoint expression."  Pls.' June

Opp'n 24 (citing *SKF*, 556 F.3d at 1353) (stating that the purpose of the petition support

requirement is to "reward injured parties who assisted government enforcement of the

antidumping laws by initiating or supporting antidumping proceedings"). Plaintiffs maintain that

denial by the ITC of ADP status for Ethan Allen based on Ethan Allen's having expressed no

position on the petition in the ITC's questionnaire is "inconsistent with the statutory construction

identified by the Federal Circuit in *SKF*." *Id.* at 24-25.

　　　Plaintiffs misconstrue the holding in *SKF*, which the Court of Appeals did not base on a

limiting construction of the CDSOA. *See SKF*, 556 F.3d at 1353. In analyzing the CDSOA

under the First Amendment, the Court of Appeals construed the CDSOA such that "the purpose

of the Byrd Amendment's limitation of eligible recipients was to reward injured parties who

assisted government enforcement of the antidumping laws by initiating or supporting

antidumping proceedings." *Id.* at 1352. When later alluding to a "limiting construction" that

"rewards actions (litigation support) rather than the expression of particular views," the Court of

Appeals was speaking only hypothetically and in *dicta*. *Id.* at 1353 ("Finally, if we were to view

this case as involving the construction of statutory language rather than an exercise in

ascertaining statutory purpose, the result would be the same."). But the Court of Appeals held,

broadly, that the CDSOA "is valid under the First Amendment" and "is also clearly not violative

of equal protection under the rational basis standard." *Id*. at 1360. The Court of Appeals did not

adopt a limiting construction under which the CDSOA, in order to conform to the First

Amendment, must be construed to permit distributions to a party who participated in the ITC's

investigation but did not "indicate support of the petition by letter or through questionnaire

response." 19 U.S.C. § 1675c(d)(1). As we pointed out previously, the Court of Appeals stated

that it was "rational for Congress to conclude that those who did not support the petition should

not be rewarded," and it did so in the context of discussing "the role of parties opposing (or not supporting) the petition." *Id*. at 1359.

Plaintiffs also cite legislative history of the Byrd Amendment to support the proposition that Congress intended to effectuate a broad remedy for injurious foreign dumping and thus did not intend to benefit only those who supported petitions. Pls.' Jun Opp'n 3-6. The legislative history plaintiffs cite, which speaks of injured domestic producers and industries in the aggregate, does not support a construction disregarding the language of the statute itself, 19 U.S.C. § 1675c(b)(1), (d)(1), which determines ADP eligibility on an individual, not an industry, basis and limits eligibility to petitioners and those in support of a petition.

For the reasons discussed in the foregoing, we conclude that plaintiffs' claim arising under the APA must be dismissed.

### III. CONCLUSION

Plaintiffs' facial and as-applied constitutional claims are precluded by binding precedent, and plaintiffs' APA claim rests on an impermissible construction of the CDSOA. All claims in this action must be dismissed as they are not supported by "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs already have availed themselves of the opportunity to amend their complaint. We conclude that it is appropriate to enter judgment dismissing this action.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: January 20, 2012
        New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| **ETHAN ALLEN GLOBAL, INC. and ETHAN ALLEN OPERATIONS, INC.**,<br><br>          Plaintiffs,<br><br>          v.<br><br>**UNITED STATES**,<br><br>          Defendants,<br><br>          and<br><br>**KINCAID FURNITURE CO., INC., L & J.G. STICKLEY, INC., SANDBERG FURNITURE MANUFACTURING COMPANY, INC., STANLEY FURNITURE CO., INC., T. COPELAND AND SONS, INC., and VAUGHAN-BASSETT FURNITURE COMPANY, INC.**,<br><br>          Defendant-Intervenors. |

**Before:  Gregory W. Carman, Judge**
          **Timothy C. Stanceu, Judge**
          **Leo M. Gordon, Judge**

**Court No. 08-00302**

## JUDGMENT

          Upon consideration of the First Amended Complaint, the motions to dismiss for failure to state a claim upon which relief can be granted filed by defendants U.S. International Trade Commission, U.S. Customs and Border Protection, and the defendant-intervenors, and all other papers and proceedings herein, and in conformity with the court's Opinion issued on this date, it is hereby

          **ORDERED** that the motions to dismiss of defendants and defendant-intervenors be, and hereby are, GRANTED; and it is further

          **ORDERED** that this action be, and hereby is, DISMISSED.


                                                            /s/ Timothy C. Stanceu_____
                                                            Timothy C. Stanceu
                                                            Judge

Dated: January 20, 2012
          New York, New York